FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Western Division

00 JAN 21 AM 10: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

SUSETTE DUNLAP, )
)
Plaintiff, )
)
v. ) CV-98-P-1909-W
)
ALABAMA POWER COMPANY, )
)
Defendant. )

ENTERED

JAN 21 2000

---

FRIEDA ABRAMS and )
MARIE BATSON, )
)
Plaintiffs, )
)
v. ) CV-98-P-2578-W
)
ALABAMA POWER COMPANY )
)
Defendant. )

## Opinion

Before the Court is a Motion for Summary Judgment[1] filed on August 30, 1999 by Defendant Alabama Power Company ("APCo"). While this motion was filed in *Dunlap v. Alabama Power Co.*, CV-98-P-1909-W, it also addressed claims brought in a consolidated action, *Abrams v. Alabama Power Co.*, CV-98-P-2578-W.[2] The motion was heard with oral argument at the January 7, 2000 motion docket. For the reasons expressed below, Defendant's motion is due to be granted in part and denied in part.

---

[1] In addition to APCo's Motion for Summary Judgment, there were three other motions in this case that were heard at the January 7, 2000 motion docket: a Motion by Plaintiff Dunlap to Compel Adequate Responses to Plaintiff's First Request for Production; a Motion by Defendant for a Protective Order; and a Motion by Defendant to Strike certain affidavits filed by Plaintiffs, or portions thereof. As was indicated during the hearing, Plaintiff's Motion to Compel is granted with respect to request for production numbers two and nine and is otherwise denied. Defendant's Motion for a Protective Order is granted. Because the affidavits or portions thereof which Defendant seeks to strike have no bearing on this Court's assessment of Defendant's Summary Judgment motion, this motion is due to be denied.

[2] This opinion addresses Defendant's Motion as it relates to both cases.



I. Facts

1. The Company and its Job Classifications

Alabama Power Company is a publicly-held utility that operates six fossil fuel electric generating plants in Alabama: Gorgas Steam Plant in Walker County; Miller Steam Plant in Jefferson County; Gadsten Steam Plant in Etowah County; Greene County Steam Plant; Barry Steam Plant in Mobile County; and E.C. Gaston Steam Plant in Shelby County.

Specialist- Administrative Support ("SAS") is an administrative job classification at APCo. According to APCo, to be classified as an SAS, an individual must spend at least fifty percent of his or her time performing administrative or clerical duties. Within this job classification, there are different ranges, such as Specialist B- Administrative Support and Specialist A- Administrative Support. Prior to a restructuring in 1994, the positions encompassed by the SAS classification were held by "Senior General Clerks."

Power Generation Analyst ("PGA") is classified by APCo as a technical position. According to APCo, the position requires certain technical knowledge through education and/or experience. Since April of 1993, APCo has required all applicants for PGA positions to submit to a written test designed to evaluate the individual's mechanical and technical skills. Applicants who do not make a certain score on the test are not considered for PGA positions. Prior to a restructuring of personnel which occurred in 1994, the positions encompassed by the PGA classification were referred to as "Engineering Aides."

2. The Plaintiffs

A. Susette Dunlap

Dunlap began her employment with APCo in 1974 as a Junior Clerk at the Gaston Steam Plant in Wilsonville, Alabama. After bringing a successful Equal Pay Act claim against her employer in 1988, Dunlap was removed from her position coordinating the workforce and placed in the warehouse at Gaston as a Clerk. At the same time, an "Engineering Aide" named Wayne Shaw took over Dunlap's prior duties of scheduling the workforce. In 1994, Shaw was removed from the scheduling position and three female clerks, including the two Co-Plaintiffs, Freida Abrams and Marie Batson, took over his duties. In 1995, Tom Frazier, the Assistant Plant Manager of the Gaston plant, informed Dunlap that she was to return to her previous position of scheduling the work force. Dunlap worked the scheduling duties as an SAS until 1997, when APCo received an employee concern from Sara Smitherman, the individual at Gorgas Steam Plant who performed the operations personnel scheduling duties, questioning whether the pay for that position was appropriate. As a result, an evaluation of the position was conducted, and, based upon a number of completed surveys, it was determined that Dunlap and Sara Smitherman were the only APCo employees who performed solely personnel scheduling duties. Some PGAs performed scheduling work, but had other duties. Some Administrative Support Specialists performed scheduling, but had other duties. Ultimately, it was determined that the scheduling job being performed by Smitherman and Dunlap should be

upgraded to a new position labeled as "Scheduler," a position which carried with it a slight salary upgrade from regular administrative positions. To this day, Dunlap is the Scheduler for APCo's Gaston plant.

### B. Frieda Abrams

Abrams began her employment with APCo in 1978 as a Clerk in the Gaston Steam Plant. In 1994, Abrams, along with Plaintiff Batson and another Clerk, began performing scheduling work for the Gaston plant. Abrams performed scheduling duties, as well as her previous duties, for approximately one year, when Plaintiff Dunlap took over the scheduling for operations. In early 1995, Abrams was rotated to the departments of Project Support and Chemical and Results. She currently serves as a Specialist B- Administrative Support and does payroll, expense accounts, filing, orders parts, and does other clerical duties. Abrams also performs scheduling for training classes in the Plant and is the backup scheduler for the plant when Dunlap needs assistance.

### C. Marie Batson

Marie Batson began her employment with APCo in 1980 as a Clerk in the Gaston Steam Plant. In 1994, Batson, along with Plaintiff Abrams and another Clerk, began performing scheduling work for APCo under its new team concept. Like Abrams, Batson performed scheduling for her team for approximately one year. In 1995, Batson was rotated out of her scheduling position and into the warehouse. She currently serves as a Specialist B- Administrative Support at the Gaston Steam Plant. Abrams performs clerical duties such as payroll, expense accounts, filing, ordering parts, preparing invoices, and various other clerical duties.

3. The Claims

In July of 1998, Dunlap initiated an action against APCo for gender-based pay discrimination. Subsequently, Batson and Abrams initiated a separate action containing similar allegations. The two actions were consolidated before this Court on December 15, 1998. Specifically, the two complaints allege causes of action for sex discrimination, in contravention of Title VII and the Equal Pay Act. As a basis for their claims, Plaintiffs complain generally that they perform the same types of clerical duties as men who hold the title of PGA, yet are paid at a much lower rate. On August 30, 1999, APCo filed a Motion for Summary Judgment as to all of Plaintiffs' claims.

## II. Equal Pay Act Claims

Plaintiffs have brought claims against APCo for gender discrimination in violation of the Equal Pay Act. The EPA prohibits employers from paying women at a rate less than men for "equal work on jobs the performance of which requires equal skill, effort, and responsibility...." 29 U.S.C. § 206(d)(1). In order to establish a prima facie case under the EPA, a plaintiff need not prove that the job held by a male comparator is identical to hers; however, she must demonstrate that the skill,

effort, and responsibility required in the performance of the jobs are "substantially equal." *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992). While job titles are a factor to be considered in the evaluation, "'the controlling factor under the Equal Pay Act is job content' -- the actual duties that the respective employees are called upon to perform." *Miranda*, 975 F.2d at 1533 (quoting *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir.), cert. denied, 414 U.S. 822, 94 S. Ct. 121 (1973)). Once a plaintiff has met this burden, the burden shifts to the defendant to prove that a "factor other than sex" is responsible for the disparity in pay. *Miranda*, 975 F.2d at 1533.

In the present case, APCo is entitled to summary judgment on Plaintiffs' EPA claims because Plaintiffs have failed to make out a prima facie case for sex discrimination. The Eleventh Circuit has recognized that the plaintiff's burden in proving that she performed substantially similar work for less pay is a "fairly strict burden." *Id.* at 1526. The Plaintiffs have not offered sufficient evidence to satisfy this burden in the present case. Plaintiffs' basic contention is that they were paid less than PGAs who, like the Plaintiffs, performed mostly clerical duties. Despite the fact that Plaintiffs did perform some duties that were similar to those performed by a number of the alleged comparators, all of the comparators had different and/or additional responsibilities which distinguished their positions from those held by the Plaintiffs. In short, Plaintiffs have not offered sufficient evidence that the positions which they held were "substantially similar" to those held by their comparators to survive summary judgment on their Equal Pay Act claims.

### III. Title VII Claims

The Supreme Court's disparate treatment cases, such as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), provide the appropriate framework for evaluating claims for gender-based wage discrimination under Title VII. *Meeks v. Computer Assoc. International*, 15 F.3d 1013, 1018-19 (11th Cir. 1994). Absent direct evidence of discrimination, a plaintiff seeking to recover for gender-based wage discrimination must first present a prima facie case of discrimination. Once a prima facie case has been established by a Title VII plaintiff, the burden shifts to the defendant employer to articulate a "legitimate, non-discriminatory reason for the pay disparity." *Meeks*, 15 F.3d at 1019. In order to survive summary judgment, the plaintiff must then show that defendant's proffered reason was pretextual or that "a discriminatory reason more likely motivated the employer." *United Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

Unlike the Equal Pay Act, plaintiffs pursuing a disparate treatment claim under Title VII are required to establish an intent to discriminate on the part of their employer. *Id.* at 1019. However, under the disparate treatment approach of Title VII, there is a relaxed standard of similarity between male and female-occupied jobs. *Miranda*, 975 F.2d at 1526. A Title VII plaintiff can establish a prima facie case of gender discrimination by demonstrating that she occupies a job that is similar to that of higher paid males. *Id.* This required showing of "similarity" can be met by establishing that a plaintiff's duties and types of tasks are similar to those of men, a showing which is easier to make than the "substantial similarity" required to make out a prima facie case under the Equal Pay Act. *Cardin v. Via Tropical Fruits, Inc.*, 1993 WL 945324, at *12 (S.D. Fla. July 9, 1993).

1. Susette Dunlap

In the present case, Plaintiff Dunlap has offered sufficient evidence to survive summary judgment on her Title VII claims. While it is undisputed that most of the alleged comparators in this case performed duties that were additional to and/or distinct from those performed by Dunlap, she has presented evidence that the work done by at least one PGA at APCo was very similar to the work which she performed. Specifically, according to a scheduling job survey filled out by Rowman Mitchell, a former PGA at the Miller Steam Plant, a large majority of his duties were scheduling duties which were very similar to those performed daily by Plaintiff Dunlap. Defendant's proffered "non-discriminatory" reasons for the pay disparities at issue are also insufficient to support an entry of summary judgment. APCo argues that the purported comparators in this case perform numerous technical duties which justify a different pay scale. Furthermore, the Defendant relies upon the evaluation performed with respect to the Scheduling position as supportive of the pay rate for Plaintiff Dunlap. Nevertheless, the former job descriptions/ duties of Rowman Mitchell and Wayne Shaw are enough to create a factual issue concerning whether APCO's proffered reasons were pretextual. Therefore, because reasonable minds could differ as to whether the positions in question are in fact "similar" for Title VII purposes, summary judgment is inappropriate at this time.

It is also possible that Plaintiff Dunlap[3] might have a claim under Title VII for disparate impact with respect to the test initiated in 1993 by APCo to be given to individuals attempting to qualify for PGA positions. A plaintiff can recover under the disparate impact theory by proving that some employment practice which is facially neutral has a disproportionately adverse effect on employees who are members of a protected class. *Mitchell v. Jefferson Co. Bd. of Education*, 936 F.2d 539, 546 (11th Cir. 1991). Dunlap argues in her brief that there has been no demonstration by the Defendant that the PGA test is properly validated or bears any relationship to the job of a PGA. Nevertheless, Dunlap has offered no statistical evidence which shows that the test in question has a disparate impact on women. Therefore, the Court declines to evaluate her claim upon that model at this time.

2. Freida Abrams and Marie Batson

Unlike Dunlap, Plaintiffs Abrams and Batson have not offered sufficient evidence to establish a prima facie case of gender discrimination. While Abrams and Batson have presented evidence that a few of the duties that they perform are similar to duties performed by some PGAs, none of their alleged comparators had job descriptions or performed duties that were sufficiently similar to these two plaintiffs to survive summary judgment. All of the named comparators are required to perform a number duties which are greatly different from those performed by these Plaintiffs, including substituting as foremen and other technical duties. *See EEOC v. Reichhold Chemicals*, 988 F.2d 1564, 1571, n. 4 (11th Cir. 1993)(stating that evidence that a comparator's job was more technical than that of a plaintiff provides a sufficient basis for ultimately rejecting her claim). Plaintiffs attempt to overcome their "similarity" problems by arguing that their responsibilities, like those of their comparators, were "clerical in nature." Nevertheless, the required showing of "similarity" to establish

---

[3] Of the three Plaintiffs, only Dunlap has taken and failed the PGA test.

a prima facie case under Title VII is met by establishing that a plaintiff performs the same duties and types of tasks as men. *See, e.g., Cardin*, 1993 WL 945324, at *12. Batson and Abrams have decidedly different job responsibilities from the alleged comparators, making their claims based upon the "clerical" nature of their positions akin to claims for comparative worth or "increased compensation on the basis of a comparison of the intrinsic worth or difficulty of their jobs with that of other jobs in the same organization...." *County of Washington v. Gunther*, 452 U.S. 161, 166 (1981). Furthermore, while Plaintiffs have offered affidavits from two former employees, Tom Frazier and Wayne Shaw, who testified that the positions of PGA and SAS were both non-technical positions which involved the same type of clerical tasks, Shaw has not been employed by APCo since 1995 and Frazier left APCo in 1997. Frazier also testified in his deposition that he did not have any personal knowledge of what all of the duties were of any single PGA and that his entire affidavit was referring to Susette Dunlap's situation, not Abrams' or Batson's.

Plaintiffs' attempts to compare themselves with Wayne Shaw are also misplaced. Wayne Shaw has not worked at Alabama Power since 1995. While Abrams, Batson, and another Clerk did take over the scheduling duties which Wayne Shaw performed in 1994, neither Abrams or Batson has done any significant scheduling work since early 1995.[4] Abrams and Batson filed their EEOC charges on February 16, 1998. As such, to the extent that Plaintiffs seek to recover based upon the former scheduling positions which they held, those claims are time barred. *See* 42 U.S.C. § 2000e-5(e). While it is true that "[e]ach week's paycheck that delivers less to a [woman] than a similarly situated [man] is a wrong actionable under Title VII," Plaintiffs have made no showing that any checks that they received within the 180 days of their EEOC filing delivered less money to them than similarly situated men. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993)(quoting *Bazemore v. Friday*, 478 U.S. 385, 395-96 (1986)). The "continuing violation" doctrine would serve to extend the 180 day period for filing an EEOC charge only if, like Dunlap, Abrams and Batson were still performing their former scheduling duties.

IV. Conclusion

For the above reasons, Defendant's Motion for Summary Judgment is due to be granted with respect to all three Plaintiffs' Equal Pay Act claims. Summary Judgment is also appropriate on Abrams' and Batson's Title VII claims. APCO's motion is due to be denied with respect to Dunlap's Title VII claim.

Dated: January 20, 2000

Judge Sam C. Pointer, Jr.

Service List:
    Teresa Minor

---

[4] Abrams performs some scheduling for training classes and serves as a backup scheduler.

John Richard Carrigan
Marvin L. Stewart, Jr.
Guy Chappell, III
Charles M. Thompson